FILED

2013 Sep-19  AM 11:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| SYLVESTER GRAVES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:12-CV-1054-VEH |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

The plaintiff, Sylvester Graves, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for disability insurance benefits and Supplemental Security Income. Plaintiff timely pursued and exhausted

---

[1] The court notes that, on February 14, 2013, Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security."). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the officer of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

his administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.  STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth, at 1239.   This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm the Commissioner's decision if it is supported by substantial evidence.  Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003).

2

## II.  STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

3

(5)     whether the claimant is capable of performing any work in the
national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800

F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and

Two, she will automatically be found disabled if she suffers from a listed impairment.

If the claimant does not have a listed impairment but cannot perform her past work,

the burden shifts to the Secretary to show that the claimant can perform some other

job." Pope, at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the present case, the ALJ determined the plaintiff met the first two tests, but

concluded he did not suffer from a listed impairment.  The ALJ found the plaintiff

had the residual functional capacity ("RFC") to perform light work as defined in 20

C.F.R. § 404.1567(b) and 416.967(b) "except that he is precluded from climbing

ladders, ropes and scaffolds; can only occasionally engage in stooping, kneeling,

crouching and crawling; is required to avoid concentrated exposure to extreme cold

and humidity; and precluded from exposure to unprotected heights and hazardous

machinery." R. 27.  The plaintiff was also limited to the performance of "simple,

routine and repetitive tasks as a result of a mild to moderate impairment of

concentration and the side effects of prescribed medications." R. 27.  With this RFC,

the ALJ found the plaintiff unable to perform his past relevant work. R. 30.  Once it

is determined that the plaintiff cannot return to her prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559.  When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.  The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony. Foote, at 1559.  Based on the plaintiff's RFC and expert vocational testimony, the ALJ found the plaintiff would be able to perform other work in the national economy. R. 30-31.  Therefore, he found the plaintiff was not disabled at step five of the sequential evaluation framework.  R. 31.

### III.  FACTUAL BACKGROUND

The plaintiff alleges he is disabled due to symptoms and limitations related to human immunodeficiency virus (HIV), lumbar degenerative disc disease, dysthymic disorder, and chronic severe pain.  The medical records show the plaintiff was treated by Dr. Mobley (or others in her practice) for HIV, back pain and other various complaints.  On December 5, 2006, Dr. Mobley's treatment note shows the plaintiff reported he felt well and had no complaints.  R. 200.  On June 28, 2007, he was seen in follow-up for his HIV.  R. 199.  He reported that he had an episode of a skin rash

on his arms, but it had self-resolved.  R. 199.  Dr. Mobley noted "[h]e has otherwise

done well."  R. 199.  On February 26, 2008, the plaintiff had no complaints of illness

from his HIV, and his pain rating was zero.  R. 198.  On April 7, 2008, the plaintiff

was examined at Dr. Mobley's office by Linda Hall.  R. 197.  He complained of

chronic low back pain, but his pain level was indicated as zero.  R. 197.  Dr. Mobley

referred plaintiff to physical therapy for strengthening exercises. R. 197, 259.  When

the plaintiff was seen on November 4, 2008, he complained of low back pain,

primarily when getting out of bed in the morning.  R. 258.  The plaintiff reported

these episodes lasted two to three weeks, and might occur every two to three months.

R. 258.  He reported his pain was not usually helped with NSAIDs or muscle relaxers.

R. 258.  There is no indication of a physical examination of the plaintiff's back at this

visit.  R. 258.  The diagnostic assessment was chronic low back pain, and the plan

was physical therapy.  R. 258.  When the plaintiff was seen on January 27, 2009, it

was noted he was not interested in physical therapy.  R. 257.  The treatment note

indicates tramadol and Motrin had been prescribed without relief.  R. 257.  Feldene,

a non-steroidal anti-inflammatory drug, was prescribed.  R. 257.  This is the last

treatment note from Dr. Mobley that mentions back pain.  On April 21, 2009, the

plaintiff was seen by Dr. Mobley with a cough.  R. 256.  When the plaintiff was seen

on November 3, 2009, the treatment note indicates plaintiff's pain rating was zero. R. 261.

In addition to treatment records, the plaintiff was referred by the Social Security Administration for a consultative physical examination by Dr. Touger on June 11, 2008.  The plaintiff reported to Dr. Touger that his back hurt "if he had been standing for a while."  On physical examination, Dr. Touger noted a "straight leg raise sign on the right," but observed the plaintiff "maintain[ed] full range of motion of his right hip."  R. 227.  Dr.  Touger found a reduced range of motion in flexion, right lateral flexion, and left lateral rotation.  R. 228.  Dr. Touger's diagnostic impression included the following:

> Lower back pain with some evidence of radicular pain.  He has not had any MRI scanning.  He has not been seen by orthopedist or neurosurgeon.  I think all of the above would be appropriate at this time.  He probably does have a lesion that would be amenable to surgery to get him back to full function.

R. 227.

Subsequent to Dr. Touger's examination, the plaintiff was sent for an x-ray exam by the Social Security Administration.  That x-ray showed "early degenerative changes of the lumbar spine with decreased lumbar lordosis."  R. 245.  The x-ray showed the "vertebral body heights and disc spaces appear[ed] preserved."  R. 245. There were no apparent abnormalities.  R. 245.

7

The plaintiff was examined on January 25, 2010, by Dr. Allen at the request of his attorney.  Dr. Allen reviewed the plaintiff's medical treatment records and observed there had been many notations of low back pain.  R. 267.  He noted the medical records contained "referrals to physical therapy, but 'no-shows' for therapy are also noted throughout the record."  R. 267.  Dr. Allen reviewed the plaintiff's earlier Social Security disability evaluation, and noted the previous examiner opined the plaintiff's "condition had potential for rehabilitation."  R. 267.  Dr. Allen also commented on the lack of diagnostic imaging supporting the plaintiff's pain complaints:  "Of note, there is no MRI and no plain film x-rays to substantiate his low back pain."  R. 267.  The plaintiff reported to Dr. Allen he could easily carry a gallon of milk, but denied being able to carry more than one to two bags of groceries at a time, especially during flares of his back pain.  R. 286.

On physical examination, Dr. Allen found the plaintiff has an antalgic gait.  R. 268.  However, the plaintiff's ability to heel and toe walk was within normal limits, and he was able to squat and bend over 50%.  R. 268.  Dr. Allen found the plaintiff had paraspinal hypertrophy on the left, spasm of the left paraspinal muscles, and thickening of the left musculature.  R. 268.

Dr. Allen concluded his examination note with the following medical source statement:

8

> It is my assessment that [plaintiff's] episodic back pain could potentially be prevented with a thorough  tailored low back pain program, strengthening with range of motion per physical therapy.  Based on his exam and history, he does not seem to have a surgically correctable lesion.  After his initial fall, he has two years of pain-free living following an intense course of physical therapy.  This would suggest that these modalities might benefit him again.  His HIV disease appears to be stable and does not appear to be causing any marked limitations on his activities of daily living or his ability to compete and perform in the workplace.

R. 268.

Dr. Allen also completed a physical capacities evaluation (PCE), on which he indicated the plaintiff would be able to lift and/or carry "10 pounds occasionally or less frequently."  R. 269.  Dr. Allen indicated the plaintiff would be able to sit for a total of eight hours, and stand/walk for a total of two hours, in an eight-hour workday.  R. 269.  Dr. Allen limited the plaintiff to occasional bending and stooping.  R. 269.  He limited the plaintiff to occasional pushing/pulling of arm and/or leg controls, and occasional gross manipulation.  R. 269.  Dr. Allen also completed a form indicating the plaintiff's pain was "present to such an extent as to be distracting to adequate performance of daily activities or work."  R. 270.

## IV.  DISCUSSION

### A.

The plaintiff argues on appeal that the ALJ improperly based his RFC findings on the opinion of a non-examining, non-medical source.  Pl.'s Br. 7.  He also argues

9

there is no medical source statement in the file from any examining or reviewing physician. Pl.'s Br. 7. Therefore, he argues the case must be remanded for a physical capacity evaluation or medical source opinion statement from a treating or examining source to support the ALJ's RFC findings. Pl.'s Br. 9. These arguments are without merit.

The ALJ expressly declined to give an assessment of the State agency disability specialist's opinion because it was completed by a non physician. R. 29. The regulations require an ALJ to consider the opinions of State agency physicians and psychologists. 20 C.F.R. § 404.1527(e)(2). But the findings of non-medical State agency disability specialists are not considered to be opinion evidence at the ALJ level. See Siverio v. Comm'r of Soc. Sec., 461 Fed. App'x 869, 871-72 (11th Cir. 2012) (unpublished) (finding an RFC form completed by a single decision maker is not evidence at the ALJ level under POMS § DI 24510.050).[2] Therefore, the ALJ correctly concluded that no assessment of the disability specialist's RFC finding was required. Even though the ALJ's RFC closely tracks that of the disibility specialist, the ALJ states that his RFC finding was based on his consideration of the evidence. R. 27. Therefore, the ALJ did not improperly rely upon the opinion of the non-medical State agency disibility examiner.

_____

[2] The POMS is a policy and procedural manual issued to help clarify the regulations for the Social Security Administration field offices.

The plaintiff's argument that there must be a medical source statement from an examining physician to support the ALJ's RFC finding is without merit.  In <u>Green v. Social Security Administration</u>, the court found the ALJ had properly refused to credit a Physical Capacities Evaluation ("PCE") from claimant's treating physician.  223 F. App'x 915, 922-23 (11th Cir. 2007) (upublished).  The court rejected claimant's argument that, without the PCE, there was nothing in the record upon which the ALJ could base his RFC finding.  <u>Id.</u> at 923.  The court held that other evidence from the plaintiff's doctors (which did not contain a PCE or RFC assessment) was sufficient to support the ALJ's finding that the claimant could perform light work.  <u>Id.</u> at 923-24; <u>see also</u> <u>Langley v. Astrue</u>, 777 F Supp. 2d. 1250, 1258 (N.D. Ala. 2011)(holding RFC is not a medical opinion and need not be based upon a doctor's RFC opinion). In the present case, there is other medical evidence in the record from treating and examining doctor's to support the ALJ's RFC finding.  That evidence included a lumbar spine x-ray showing only early degenerative changes, numerous reports of no pain by treating physicians, and largely normal findings on physical examination by Dr. Touger.  Therefore, an RFC opinion from a treating or examining source was not required in the present case.

11

**B.**

Plaintiff next argues that the ALJ failed to properly consider his pain pursuant to the Eleventh Circuit pain standard.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote v. Chater, 67 F.3d at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Id. (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If an ALJ discredits a claimant's subjective complaints, he must give "explicit and adequate reasons" for his decision.  See id. at 1561-62.  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  Id. at 1562.  The ALJ's credibility determination need not cite "particular phrases or formulations," as long as it enables the court to conclude that the ALJ considered Plaintiff's medical condition as a whole.  See Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (citing Foote, 67 F.3d at 1561).

In the present case, the ALJ found the plaintiff had medically determinable impairments that could reasonably be expected to cause his alleged symptoms. However, he did not credit the plaintiff's testimony of disabling back pain.  The ALJ

noted that treatment notes showed the plaintiff's HIV was currently asymptomatic. R. 28.   He also concluded the treatment records showed the plaintiff's back impairment was not more limiting than the restrictions contained in his RFC finding. R. 28.  The ALJ specifically noted the plaintiff had reported a pain level of zero when he saw Dr. Mobley on November 3, 2009.  R. 29.  The medical records show the plaintiff reported a pain level of zero on a number of other visits to Dr. Mobley.

The ALJ noted the plaintiff's statements to Dr. Neville, the consultative psychological examiner, and the documents he submitted in connection with his disability claim, "indicated that the claimant maintains his personal hygiene, does housework, cooks several times a week, drives and uses public transportation, shops, does errands, grows plants, reads, watches television, exercises, and attends church." R. 28.  The ALJ found the plaintiff's "wide range of recorded daily activities" was in "marked contrast to [plaintiff's] testimony that he ha[d] engaged in virtually no daily activities since he filed his claim and reflect[ed] poorly on the credibility of such testimony."  R. 28.  The ALJ found the plaintiff's allegation of disabling back pain since 2001 was "refuted by the fact that he worked at a medium to heavy level of exertion until long after 2001, i.e., until he stopped working in 2007."  R. 29.

The ALJ noted the x-ray of the plaintiff's lumbar spine on July 28, 2008, showed "only early degenerative changes."  R. 28.  He also observed Dr. Touger's

13

findings on his examination "were largely normal (with the exception of some limitation in the range of the claimant lumbar spinal motion, a limitation reflected in the above-delineated assessment of the claimant's residual functional capacity) and did not support the claimant's allegations." R. 29.

The ALL properly applied the Eleventh Circuit pain standard and clearly articulated his reasons for refusing to credit the plaintiff's testimony. Those reasons are supported by substantial evidence, and may not disturbed on appeal. Therefore, plaintiff's argument is without merit.

## C.

The plaintiff's final argument is that the ALJ did not properly consider the opinions of the consulting examiners. In determining how much weight to give to each medical opinion, the ALJ must consider several factors including: (1) whether the doctor has examined the plaintiff; (2) whether the doctor has a treating relationship with the plaintiff; (3) the extent to which the doctor presents medical evidence and explanation supporting his opinion; (4) whether the doctor's opinion is consistent with the record as a whole; and (5) whether the doctor is a specialist. C.F.R. §§ 404.1527(c), 416.927(c). Neither Dr. Touger nor Dr. Allen were treating physicians.

The plaintiff argues that the ALJ improperly rejected Dr. Allen's Physical Capacity Evaluation (PCE) and clinical assessment of pain form. The ALJ gave little weight to these assessments. R. 29. The ALJ found the form completed by Dr. Allen was "contrary to the claimant's medical record as a whole." R. 29. The ALJ noted Dr. Allen's "findings regarding the claimant's level of pain specifically contradict the objective medical evidence of the claimant's treating physician on November 3, 2009," which indicated a pain level of zero. R. 29. The ALJ further found Dr. Allen's conclusions concerning the plaintiff's work related abilities were unsupported by the objective findings in Dr. Allen's report of his examination. R. 29. The ALJ noted Dr. Allen found "a full range of motion and full strength in the claimant's upper and lower extremities" and no "sensory or reflex deficits." R. 29. The ALJ also cited Dr. Allen's "own notation that there was no MRI or x-ray evidence substantiating the claimant's allegation of lower back pain." R. 29. The ALJ ended his discussion of Dr. Allen's report as follows:

> The discontinuity between Dr. Allen's findings and his conclusions is rather striking: to cite but one example, although Dr. Allen opined that the claimant can only occasionally engage in gross manipulation, his examination findings concerning the claimant's upper extremity function and strength are entirely normal. It appears clear that Dr. Allen's stated opinion concerning the claimant's work-related functional abilities was based in significant part upon an uncritical acceptance of the claimant's subjective, unsupported and evidentiarily-refuted allegations. Little weight is accordingly given to the opinions and assessment of Dr. Allen.

R. 29.

The ALJ's decision shows he carefully considered Dr. Allen's opinions, and chose not to credit them. The reasons given for rejecting those opinions are in accordance with the proper legal standard and supported by substantial evidence.

The plaintiff also argues that the ALJ ignored the findings of Dr. Touger. However, the ALJ specifically stated that his RFC finding reflected Dr. Touger's finding of a reduced range of motion. R. 28-29. The ALJ also found Dr. Touger's physical examination was largely normal otherwise. R. 28-29. The only specific medical opinion of Dr. Touger cited by the plaintiff was his statement that the plaintiff "probably does have a lesion that would be amenable to surgery to get him back to full function." Pl.'s Br. 10. This opinion was contradicted by Dr. Allen, who opined the plaintiff "does not seem to have a surgically correctable lesion." R. 268. Therefore, the court finds the ALJ properly considered Dr. Touger's findings and opinions in his decision.

## V.  CONCLUSION

The court concludes the ALJ's determination that the plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this decision. Accordingly, the Commissioner's final decision

16

is due to be affirmed. An appropriate order will be entered contemporaneously herewith.

**DONE** and **ORDERED** this 19th day of September, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

17